1
2
3
4
5

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 28, 2020

SEAN F. McAVOY, CLERK

6           UNITED STATES DISTRICT COURT

7           EASTERN DISTRICT OF WASHINGTON

8

9     PAUL S.,                              No. 1:19-CV-03119-JTR

10              Plaintiff,                   ORDER GRANTING PLAINTIFF'S
                                             MOTION FOR SUMMARY
11         v.                                JUDGMENT

12

13    ANDREW M. SAUL,
      COMMISSIONER OF SOCIAL
14    SECURITY[1],

15

16              Defendant.

17

18         **BEFORE THE COURT** are cross-motions for summary judgment.  ECF

19    No. 13, 14.  Attorney D. James Tree represents Paul S. (Plaintiff); Special

20    Assistant United States Attorney Ryan Lu represents the Commissioner of Social

21    Security (Defendant).  The parties have consented to proceed before a magistrate

22    judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed

23    by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment;

24    **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter

25         [1] Andrew M. Saul is now the Commissioner of the Social Security

26    Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

27    Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

28    25(d).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

to the Commissioner for an immediate calculation of benefits pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income on July 7, 2015, alleging disability since July 1, 2015, due to depression, headaches, anxiety, COPD, nightmares, high blood pressure, and poor memory. Tr. 108-09. The application was denied initially and upon reconsideration. Tr. 194-202, 206-16. Administrative Law Judge (ALJ) Larry Kennedy held a hearing on September 13, 2017, Tr. 44-82, and issued an unfavorable decision on April 16, 2018, Tr. 21-34. Plaintiff requested review of the ALJ's decision by the Appeals Council. Tr. 273-76. The Appeals Council denied the request for review on April 3, 2019. Tr. 1-6. The ALJ's April 2018 decision is the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 29, 2019. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1966 and was 49 years old as of the filing of his application. Tr. 53. He has a 7th grade education and very little work history. Tr. 504. He had an extremely traumatic childhood, as his father severely abused Plaintiff and his mother and sister. Tr. 504, 532. Much of his childhood was spent on the run and in hiding from his father. Tr. 504. Into adulthood he continued to fear his father and have nightmares about the abuse. Tr. 56, 507, 734. He became significantly dependent on his mother, and upon her passing he became homeless. Tr. 395, 404. For years after her death in 2012, Plaintiff continued to visit her grave multiple times per month, experiencing increasing depression when he was unable to do so, and being unable to process his grief. Tr. 551, 679, 743. His mental health providers have noted his lack of progress in treatment and have indicated his counseling is effectively palliative in nature, with improvement being unlikely due to compromised cognitive systems. Tr. 542, 675, 715, 731, 740.

1      Plaintiff has also experienced physical difficulties following an accident

2  where a large tree fell on him and punctured a lung.  Tr. 532.  He has been

3  diagnosed with chronic obstructive pulmonary disease (COPD).  Tr. 428, 575.

## STANDARD OF REVIEW

5      The ALJ is responsible for determining credibility, resolving conflicts in

6  medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

7  1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with

8  deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*,

9  201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed

10  only if it is not supported by substantial evidence or if it is based on legal error.

11  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

12  defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at

13  1098.  Put another way, substantial evidence is such relevant evidence as a

14  reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

15  *Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one

16  rational interpretation, the Court may not substitute its judgment for that of the

17  ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*,

18  169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the

19  administrative findings, or if conflicting evidence supports a finding of either

20  disability or non-disability, the ALJ's determination is conclusive.  *Sprague v.*

21  *Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

22  supported by substantial evidence will be set aside if the proper legal standards

23  were not applied in weighing the evidence and making the decision.  *Brawner v.*

24  *Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

26      The Commissioner has established a five-step sequential evaluation process

27  for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *Bowen v.*

28  *Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of

proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On April 16, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 21-34.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD); organic mental disorder, affective disorder (depression versus major depressive disorder, versus PDD), and anxiety related disorder (panic disorder and generalized anxiety disorder); stress related disorder (posttraumatic stress disorder), and personality disorder. Tr. 23-24.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 25-26.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform a range of light work, with the following limitations:

He can occasionally balance, stoop, kneel, and crouch; he is limited to no climbing or crawling; he must avoid concentrated exposure to pulmonary irritants and hazards; he can perform simple and repetitive tasks; he should not have interactions with the general public or perform collaborative tasks with coworkers; he can tolerate superficial interactions with coworkers; he is limited to work with no requirement to read detailed or complex instructions or write reports and no requirement to do detailed or complex math calculations (i.e., teller or cashier).

Tr. 26.

At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 33.

At step five the ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of production assembler, inspector hand packager, and garment folder.  Tr. 33.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision.  Tr. 34.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the Commissioner erred by (1) improperly assessing the medical opinion evidence; (2) improperly rejecting Plaintiff's symptom testimony and (3) failing to find Plaintiff disabled under the grid rules based on his functional illiteracy.

## DISCUSSION

**1.    Medical opinions**

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence, asserting he improperly rejected opinions from six treating, examining, and reviewing sources.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ must offer "specific and legitimate" reasons to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

A non-examining source opinion may be rejected by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

A non-acceptable medical source may be discounted if the ALJ provides "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### a. Mental opinions

#### i. Christopher Clark, LMHC

Plaintiff's treating counselor, Christopher Clark, completed medical source statements in 2016 and 2017, commenting on Plaintiff's abilities. Tr. 617-20, 624-27. In both opinions, Mr. Clark opined Plaintiff had moderate to severe limitations in work-related functioning, and would be expected to miss work at least four times per month. *Id.* Mr. Clark also noted that Plaintiff had made very little improvement in the years he had been in treatment. Tr. 620, 627.

The ALJ gave these opinions "slight weight," finding them to be "inconsistent with the overall medical evidence of record," and noting that mental status exams indicated stable to moderate mood and no impairment in memory or intellectual functioning. Tr. 31.

Plaintiff argues the ALJ's discussion was insufficient, as it lacked any citations of examples of inconsistent records, and that the conclusion was unsupported by the record due to the ALJ's selective reading of the records.  ECF No. 13 at 14-15.  Defendant provided no defense of the ALJ's rejection of these two opinions.  ECF No. 14 at 18-19.[2]

As a Licensed Mental Health Counselor, Mr. Clark is considered a non-acceptable medical source, and thus the ALJ need only provide a germane reason for rejecting his opinions.  *Molina*, 674 F.3d at 1111.  An opinion's consistency with the medical record is a relevant and germane factor for the ALJ to consider.  *Id.*  However, substantial evidence does not support the ALJ's conclusion that Mr. Clark's opinions are inconsistent with the overall medical evidence.

Specifically, Mr. Clark's own records document Plaintiff presenting with anxiety and depression, with impairment of mood and affect, dysthymia, anhedonia, and tears on exam.  Tr. 398, 543, 551, 690, 695, 725, 730, 731, 740.  Mr. Clark also documented Plaintiff's unresolved grief and trauma and noted emotional and cognitive impairment to Plaintiff making progress in treatment.  Tr. 396, 398, 408, 542, 551, 675, 695, 715, 725, 731, 745.  He repeatedly stated in

---

[2] Defendant only addressed Plaintiff's other argument regarding Mr. Clark, that the ALJ erred in failing to discuss a treatment note from January 2016 commenting on Plaintiff's lack of progress in treatment and poor residual functional capacity for obtaining and maintaining gainful employment.  ECF No. 13 at 15.  Defendant argues the omission was harmless, as the note did not contain any specific functional limitations, and thus did not constitute an opinion the ALJ was required to specifically address.  ECF No. 14 at 18-19.  The Court agrees with Defendant.  20 C.F.R. 416.927(d).  However, the Court does acknowledge that this note is consistent with Mr. Clark's other treatment records and medical source statements.  Tr. 747.

records and treatment plans that Plaintiff was unable to sustain gainful employment.  Tr. 398, 675, 690, 747.  Furthermore, medication management records from the same facility show poor grooming, tangential speech, dysphoria, and depressed, anxious, and tearful presentation at nearly every appointment.  Tr. 392-93, 405, 413, 548 554, 680-81, 686-87, 697-98, 704-05, 722, 727, 735, 741-42.  While these records routinely note "no impairment of memory or intellectual functioning," they also state that no formal testing was done at the time.  Tr. 393, 405, 414, 548.

Records from other providers and facilities document anxious and depressed mood and affect; preoccupation with his mother's death and his father's abuse; and impaired cognitive functioning.  Tr. 506, 534, 580, 635, 641, 651, 649.  As discussed further below, three other acceptable medical sources offered opinions consistent with Mr. Clark that Plaintiff was unemployable from a mental standpoint.  Tr. 507, 511, 517.

Therefore, the ALJ's conclusion that Mr. Clark's opinions are "inconsistent with the overall medical evidence of record" is not supported by substantial evidence.

### ii.    *Philip Barnard, PhD.*

On December 12, 2013, Plaintiff attended a consultative psychological exam through the Department of Social and Health Services.  Tr. 515-19.  Dr. Philip Barnard diagnosed Plaintiff with generalized anxiety disorder, depressive disorder, cognitive disorder, learning disorder, panic disorder without agoraphobia, and personality disorder.  Tr. 516.  He opined Plaintiff had numerous moderate restrictions on his mental work-related abilities, and found he was markedly limited in handling detailed instructions, asking simple questions or requesting assistance, communicating and performing effectively in a work setting, completing a normal work week without psychological interruptions, and maintaining appropriate behavior in a work setting.  Tr. 517.  He concluded: "it is

not probable that with Mr. Stanford's panic disorder and generalized anxiety disorder he would be employable in any capacity." *Id.*

The ALJ gave this opinion "slight weight" noting that Dr. Barnard had not reviewed any records. Tr. 31. The ALJ further noted the opinion was "inconsistent with findings two days prior at Exhibit B1A, which considers the longitudinal evidence for the same period as this evaluation." *Id.*[3]

Plaintiff argues that because Dr. Barnard's opinion was issued two days after the prior ALJ decision, any records he reviewed would have been from the period already adjudicated in the previous claim, and the current decision specifically found circumstances had changed since the prior decision. ECF No. 13 at 13. Plaintiff further points out that Dr. Barnard's opinion was based on his clinical exam and current objective findings. *Id.* Defendant asserts that the ALJ reasonably rejected Dr. Barnard's opinion as conflicting with the medical findings in the prior ALJ decision. ECF No. 14 at 17.[4]

The Court finds the ALJ's discussion does not reach the specific and legitimate standard for an examining source. While the ALJ is correct that Dr. Barnard did not review any records, the ALJ failed to indicate what records would have potentially changed Dr. Barnard's opinion. Tr. 31. Dr. Barnard conducted a clinical exam and administered mental status testing that elicited objective support

---

[3] Exhibit B1A is the ALJ decision from a prior application, which was issued on December 10, 2013. Tr. 83-98.

[4] Defendant also asserts the ALJ in the current decision discussed some of the same evidence considered by the prior ALJ. ECF No. 14 at 17. This is not accurate, as the evidence considered in the present claim all post-dates the prior ALJ decision. Both decisions cite exhibits labeled "8F" and "9F," but the exhibits are from different medical facilities and cover different dates. Tr. 39, 102.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

for his opinion.  Tr. 515, 518-19.  Generally, an examining source is due more weight than a reviewing source.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to the proximity of Dr. Barnard's opinion to the prior decision, the Court finds this to be irrelevant.  As Plaintiff notes, the ALJ found Plaintiff's medical conditions had worsened since the prior ALJ decision, rebutting the presumption of continuing non-disability.  Tr. 21.  Furthermore, though the prior ALJ decision was issued on December 10, 2013, only two days prior to Dr. Barnard's exam, the hearing on the prior claim occurred in August 2013, and the latest medical evidence considered was from September 2013.  Tr. 86, 102.  More than two days had passed between the medical evidence addressed in the prior decision and Dr. Barnard's findings.

The Court finds the ALJ failed to give specific and legitimate reasons for rejecting Dr. Barnard's opinion.

### iii.    C. Donald Williams, M.D.

In September 2015, Plaintiff attended a consultative psychological exam with Dr. Williams.  Tr. 503-08.  Dr. Williams diagnosed Plaintiff with PTSD, persistent depressive disorder, and unspecified developmental disorder.  Tr. 507.  He opined Plaintiff had significant limitations in mental functioning, including an inability to sustain a reasonable level of daily activities over the course of a week, inability to engage in social relations on a consistent useful routine basis, and a lack of ability to focus on tasks, persist in their completion, and maintain adequate pace.  *Id.*  He further found Plaintiff had no demonstrated capacity to function in a work-like setting of any type on a continuous basis.  *Id.*

The ALJ gave this opinion "slight weight," finding it "not completely consistent with the evidence."  Tr. 31-32.  The ALJ pointed to records showing Plaintiff had friends and engaged in some social interaction, which the ALJ found to be contrary to Dr. Williams' assessment of marked limitations in social functioning.  Tr. 32.  The ALJ also found that, despite Dr. Williams' finding of

significant cognitive deficits, other exams found no memory or cognitive deficits.
*Id.*

Plaintiff argues the ALJ's examples of contrary evidence are not reflective of the context of the greater record, and that Plaintiff's social activities do not demonstrate an ability to socially interact in a workplace. ECF No. 13 at 16-17. Defendant argues the ALJ reasonably considered the record and identified substantial evidence in support of his conclusion. ECF No. 14 at 17-18.

The Court finds substantial evidence does not support the ALJ's conclusion. As noted above, the notations in the treatment records the ALJ cites to finding no memory or cognitive deficits specifically state that no formal testing was done. Tr. 554, 727. Dr. Williams noted specific testing that informed his opinion, including Plaintiff's impaired performance on tests of memory, fund of knowledge, and concentration; his tangential stream of thought; and his lack of insight and judgment. Tr. 506-07.

The social factors identified by the ALJ consist of minimal interactions with trusted friends. Plaintiff was functionally homeless during the entire relevant period, and transferred back and forth between two friends' homes, as he had nowhere else to live. Tr. 533, 551. The ability to interact with close friends and family is not equivalent to maintaining social relationships in the wider community, as Dr. Williams indicated. The evidence of Plaintiff helping a friend move and helping an elderly person were isolated incidents, and Plaintiff's counselor noted he had an inability to address his own needs despite wanting to help others. Tr. 710-11, 730. The Court finds these minimal records do not constitute substantial evidence in support of the ALJ's conclusion.

### iv. Brent Packer, MD

In September 2015, Dr. Brent Packer of the Washington Department of Social and Health services reviewed Plaintiff's file, including treatment records from Yakima Neighborhood Health and the psychological evaluation conducted by

Dr. Barnard.  Tr. 528.  Dr. Packer concluded that the diagnoses of COPD and cognitive deficits were supported by the available objective evidence, noted Plaintiff's marked limitations in the ability to maintain regular workplace attendance, and concluded that his combined conditions equaled SSA listing 12.05C.  *Id.*  He further opined: "This claimant is unlikely to be able to pace and persist in a competitive work environment because of the combination of physical and mental impairments."  *Id.*  Dr. Packer also completed a check-box mental functional limitations form, finding Plaintiff moderately or markedly limited in all areas of mental functioning.  Tr. 511.

The ALJ gave slight weight to Dr. Packer's opinion regarding Plaintiff's mental functioning, finding it was "based in part on evidence considered in the administratively final decision."  Tr. 31.  The ALJ further noted Listing 12.05C had changed since the opinion was offered and found that Dr. Packer did not discuss the objective evidence that supported his opinion, such as IQ scores or deficits in adaptive functioning.  *Id.*

Plaintiff argues the ALJ is incorrect in finding the opinion based on evidence that was considered in the prior decision, and notes that even though Listing 12.05C does not exist anymore, Dr. Packer also assessed Plaintiff's functional limitations separate from the Listing.  ECF No. 13 at 17.  Defendant argues the ALJ reasonably rejected Dr. Packer's opinion because he failed to cite or discuss any evidence to support the opinion.[5]  ECF No. 14 at 16.

Dr. Packer is a non-examining source, and thus the ALJ needed only to cite to specific evidence in the medical record in order to discount his opinion.  *Sousa v.*

---

[5] Dr. Packer also discussed Plaintiff's physical limitations, which were separately addressed by the ALJ.  The Commissioner's defense of the ALJ's rejection of Dr. Packer primarily focuses on the ALJ's rejection of the physical portion of the opinion.  ECF No. 14 at 15-16.

*Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  The amount of explanation a source provides is a relevant factor for an ALJ to consider.  20 C.F.R. § 416.927(c)(3).  The Ninth Circuit has expressed a preference for narrative opinions over opinions expressed on a check-the-box form.  *See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).  However, check-the-box forms that do not stand alone, but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."  *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).  Dr. Packer indicated the records he was reviewing and included copies of them within his opinion.  Tr. 515-27.  He made clear reference to the documented cognitive deficits in Dr. Barnard's 2013 evaluation.  The fact that he did not specifically re-state all of the objective findings from Dr. Barnard's exam does not make his reference any less clear.  Tr. 528.

The fact that Listing 12.05C is no longer a part of Social Security's listings does not diminish Dr. Packer's opinion regarding Plaintiff's functional limitations in the individual areas of mental functioning.  Tr. 511.  Finally, the ALJ is incorrect that Dr. Packer's opinion is based on evidence considered in the prior application.  As discussed above, Dr. Barnard's opinion post-dated the prior ALJ decision.  The other records considered by Dr. Packer were from 2015.  Tr. 510.

The ALJ therefore failed to cite to any specific evidence that undermines Dr. Packer's opinion regarding Plaintiff's mental impairments.

### b. *Physical opinions*

Plaintiff argues the ALJ erred in rejecting multiple opinions regarding Plaintiff's physical impairments.  Because the Court finds this claim can be resolved based on the mental impairments alone, it is unnecessary to reach the remainder of the arguments regarding the physical opinion evidence.

### 2.    Plaintiff's subjective statements

Plaintiff contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 13 at 17-20.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 27-28. The ALJ found the severity of Plaintiff's mental health complaints was inconsistent with the objective medical evidence of record, and noted the record reflected situational stressors that had invariably affected his mood and anxiety. Tr. 28-29. With respect to Plaintiff's physical complaints, the ALJ noted Plaintiff continued to smoke cigarettes despite recommendations to stop, and that his respiratory symptoms were not disabling to the extent alleged, giving examples of unremarkable objective findings. Tr. 29-30.

### a. Mental impairments

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  But this cannot be the only reason provided by the ALJ.  *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."). Furthermore, in discussing whether a claimant's allegations are supported by the record, the ALJ must consider the entire record in light of the overall diagnostic picture.  *See Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1200-01 (9th Cir. 2008); *Holohan v. Massanari,* 246 F.3d 1195, 1205, 1208 (9th Cir. 2001).

When read as a whole, the mental health treatment notes do not undermine Plaintiff's testimony.  Rather, as discussed above, the records consistently reveal that, despite some occasional signs of improvement, Plaintiff continually suffered from nightmares, depression, anxiety, and unprocessed grief and trauma, and lacked the executive functioning to better his situation.

The ALJ's examples of normal mental status findings and stability in the record are isolated citations that do not reflect the larger context of the record.  For example, the ALJ cited to an April 2016 note indicating Plaintiff seemed fairly stable and seemed encouraged to think about finding a job or getting a technical degree.  Tr. 28 (citing Tr. 737).  In context, Pharm.D. Shane Anderson's note indicated that Plaintiff was doing better since his medication had been increased and he had been able to visit his mother's gravesite; when unable to do so on a regular basis, Plaintiff's depression significantly worsened.  Tr. 679, 743. Despite doing "better," Plaintiff was still noted to be disheveled, guarded, and slightly irritable, with fair to poor insight and judgment.  Tr. 735.  Records

following this visit consistently document anxious, depressed, or dysphoric mood
and affect (Tr. 635, 641, 651, 690, 705, 725, 727, 730); tangential speech (Tr. 711,
722, 727); and poor executive functioning abilities (Tr. 695, 733).  The Ninth
Circuit has taken issue with ALJs citing isolated evidence of improvement:

> It is error to reject a claimant's testimony merely because symptoms
> wax and wane in the course of treatment.  Cycles of improvement and
> debilitating symptoms are a common occurrence, and in such
> circumstances it is error for an ALJ to pick out a few isolated
> instances of improvement over a period of months or years and to
> treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Similarly, Mr. Anderson regularly used the word "stable" to describe
Plaintiff's functioning when he was neither improving nor worsening, not to
indicate unimpaired functioning as the ALJ implied.  Tr. 394, 406, 549, 556, 724.
The ALJ also mis-quotes Mr. Anderson's notes in indicating that Plaintiff "seemed
encouraged to think about finding a job or getting a degree"; the comment appears
in all of Mr. Anderson's treatment notes, and shows *Mr. Anderson* encouraging
Plaintiff to think about these things, not that Plaintiff was actually considering
them.  Tr. 395, 406, 415-16, 550, 688.  The ALJ's implication that Plaintiff has no
impairment in memory or intellectual functioning on mental status exam in
September 2015 (tr. 28) ignores the second half of the sentence in the treatment
notes: "There is no impairment of memory or intellectual functioning noted *but
was not formally tested at this time.*"  Tr. 554.

"While ALJs obviously must rely on examples to show why they do not
believe that a claimant is credible, the data points they choose must *in fact*
constitute examples of a broader development to satisfy the applicable 'clear and
convincing' standard."  *Garrison*, 759 F.3d at 1018.  The ALJ's selective quoting

of the treatment notes through this entire section ignores the greater context of the records.

To the extent the ALJ referenced some of Plaintiff's activities in discounting his subjective statements, the Court finds the record does not contain substantial evidence that any of the noted activities are inconsistent with Plaintiff's allegations. The ALJ noted Plaintiff's report that he had been mentoring his friend's children on religion, and that he had been caring for cats. Tr. 28-29. The record contains only a single reference to Plaintiff mentoring his friend's children and contains no further information about this action. Tr. 745. The note about Plaintiff trying to care for neighborhood cats was reported in the context of Plaintiff's counselor noting he was spending money he did not have to spare in order to feed the cats, and was not addressing his own needs in the process. Tr. 730. Neither of these incidents indicates any daily activities that conflict with Plaintiff's reports of severely limiting mental illness.

Finally, the ALJ indicated that Plaintiff's mood and anxiety were invariably affected by some situational stressors, such as the death of his mother, legal troubles, and getting locked in a storage unit. Tr. 29. Once again, the ALJ failed to examine these factors in the greater context of the record. Plaintiff's mother passed away two-and-a-half years prior to the filing of the present application. Tr. 515. Plaintiff's mental state was not a reaction to the immediate aftermath of her death, but rather his mental illness contributed to his inability to process her death and grieve in an appropriate manner. Tr. 395, 505, 551. While additional stressors such as legal problems did not benefit his mental and emotional functioning (tr. 690), nothing in the record indicates the situational distress was the root cause of his emotional lability. Rather, his deep-seated trauma from his childhood and his cognitive barriers to therapy were repeatedly noted to impair his prognosis for improvement, resulting in his counselor deeming his treatment to be "palliative."

Tr. 398, 408, 542, 543, 549, 551, 690, 695, 715, 731, 740, 747. This was not a matter of having to deal with situational stressors.

Defendant argues the ALJ identified sufficient objective findings that were contrary to Plaintiff's allegations. ECF No. 14 at 7. However, the Court finds the ALJ's examples are not representative of the record as a whole, and a few isolated notes of improvement or waning of symptoms are not substantial evidence to meet the clear and convincing standard.

### b. Physical impairments

With respect to Plaintiff's claims of physical impairment due to breathing difficulties, the ALJ found Plaintiff's allegations to be unsupported by the record and undermined by his continued smoking. Tr. 29-30. Within the discussion of the objective evidence, the ALJ also mentioned testing that indicated poor cooperation. Tr. 30.

An ALJ may discount a claimant's allegations if the individual fails to follow prescribed treatment that might improve symptoms. Social Security Ruling 16-3p. However, the ALJ must consider possible reasons for the lack of compliance. *Id.* Social Security Ruling 18-3p also makes clear that "prescribed treatment" does not include "lifestyle modifications" like smoking cessation. Notably, while the record does indicate Plaintiff was encouraged to stop smoking entirely, he was able to reduce his smoking habit to one cigarette per day. Tr. 55, 532, 651. It is well-established that smoking cessation is incredibly difficult. A claimant's failure to comply with a recommendation to quit smoking "is an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health."). Furthermore, there is some indication from the mental health records that Plaintiff's mental illness was interfering with his judgment and decision-making in relation to his health, and that it was interfering with him

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18

getting reliable and consistent treatment.  Tr. 733.  The ALJ failed to consider any of these factors.  The Court therefore concludes Plaintiff's failure to quit smoking entirely is not a clear and convincing reason for discounting his subjective reports.

Defendant asserts Plaintiff's "poor cooperation" with clinicians was a legally valid reason for the ALJ to discount his allegations.  The Court disagrees.  The ALJ did not specifically state that he was discounting Plaintiff's statements due to lack of cooperation; he simply mentioned in the summary of the objective evidence a single spirometry test result that indicated poor cooperation with testing.  Tr. 30.  Even if the ALJ had specifically invoked poor cooperation as a basis for the assessment, the Court does not find this one test to rise to the level of a clear and convincing basis for discounting Plaintiff's subjective reports.  The pulmonary function test showed severe airflow limitations, which were noted as "most consistent with poor cooperation."  Tr. 655.  Despite this finding, Plaintiff was still diagnosed with an acute exacerbation of his severe COPD and put on a course of steroids and antibiotics.  *Id.*  This indicates that his condition was accepted as real and significant, despite the pulmonary function test result.  Without any further analysis from the doctors or the ALJ, the Court cannot find this single notation sufficient to question Plaintiff's claims.

Defendant asserts Plaintiff was also noncompliant with testing with Dr. Pellicer.  ECF No. 14 at 9.  The ALJ did not find this, and Dr. Pellicer did not draw such a conclusion.  On the contrary, Dr. Pellicer said Plaintiff was reliable and cooperative.  Tr. 532.  Though she had difficulty examining him, she noted that this could have been due to anxiety or tenderness.  Tr. 534.  Defendant's argument is not supported by the evidence.

Because none of the ALJ's other reasons amount to clear and convincing evidence for discounting Plaintiff's allegations, the lack of supportive objective findings on physical exams is not sufficient on its own.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The Court finds the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective reports.

### 3.    Illiteracy

Plaintiff argues the ALJ erred in failing to find Plaintiff to be illiterate.  ECF No. 13 at 20-21.  Had the ALJ found Plaintiff to be illiterate, he would have been found to be disabled at age 50 under Medical Vocational Guideline 202.09.  20 C.F.R. Part 404, Subpart P, App'x 2, Sec 202.09.

The Court finds the ALJ did not err in finding Plaintiff able to communicate in English.  Tr. 33.  Though Plaintiff's counselor referred to him as "functionally illiterate" a number of times (Tr. 380, 402, 539-40, 675), Plaintiff was able to complete his adult function report (albeit with significant spelling errors) and he reported on his initial application that he was able to read, write, and communicate in English.  Tr. 307, 338-45.  At the hearing he testified he could read, though it took him a while.  Tr. 73-74.  There is substantial evidence supporting the ALJ's conclusion that Plaintiff is capable of communicating in English.

### REMEDY

Plaintiff argues the decision should be reversed and remanded for the payment of benefits.  The Court has the discretion to remand the case for additional evidence and findings or to award benefits.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*.  Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, the record is adequate for a proper determination to be made and further development is not necessary.

The Ninth Circuit has set forth a three part standard for determining when to credit improperly discounted evidence as true: (1) the record has been fully developed and further administrative proceedings would serve no purpose; (2) the

ALJ has failed to provide legally sufficient reasons for rejecting the evidence in question; and (3) if the improperly discredited evidence were credited as true the ALJ would be required to find Plaintiff eligible for benefits. *Garrison*, 759 F.3d at 1020.

In this case, all three parts of the standard are met. The record has been fully developed in terms of available medical records. Tr. 47-48. The ALJ failed to provide legally sufficient reasons to reject four disabling medical opinions regarding Plaintiff's mental functioning and failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom complaints. The vocational expert testified that an individual who was off-task ten percent of the workday or absent more than one day per month would not be able to maintain employment. Tr. 78-79. Each of the improperly rejected medical opinions opined Plaintiff would have significant difficulty maintaining attention and concentration and attendance in a work environment. Plaintiff testified he had daily anxiety episodes and weekly depressive episodes that would interfere with his ability to work. If any of this evidence were credited as true, the ALJ would be required to find Plaintiff eligible for benefits at step five of the sequential evaluation process. The Court also notes that the medical opinions and Plaintiff's testimony are all consistent. As such, this Court remands the case for an immediate calculation of benefits.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.      Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.      The matter is **REMANDED** to the Commissioner for an immediate calculation of benefits.

1    4.    An application for attorney fees may be filed by separate motion.

2    The District Court Executive is directed to file this Order and provide a copy

3    to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and

4    the file shall be **CLOSED**.

5    **IT IS SO ORDERED.**

6    DATED May 28, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 22